MAY, 1842. 209

First Municipality of New Orleans v. The Orleans Theatre Company.

## THE FIRST MUNICIPALITY OF THE CITY OF NEW ORLEANS *v.* THE ORLEANS THEATRE COMPANY.

A subscription by a municipal corporation, to the stock of an incorporated company, though unauthorized by the charter of the municipality, will be binding on it if subsequently sanctioned by the legislature.

A stockholder in a company cannot avail himself of the misbehavior of the corporation, in not investing its capital stock according to the charter, to avoid his own contract.

Sect. 3 of the act of 25th March, 1831, which provides that where an injunction is dissolved, the plaintiff and surety, shall be condemned, *in solido*, to pay interest at ten per cent a year on the amount of the judgment, and not more than twenty per cent damages unless a greater amount be proved, applies only where judgments have been enjoined.

Damage occasioned by the institution of the suit, cannot be pleaded in reconvention. Where defendant has been injured, the remedy is by action on the bond.

APPEAL from the District Court of the First District, *Buchanan,* J.

GARLAND, J. It appears that in the month of November, 1836, the Council of Municipality, No. 1, adopted a resolution, by a vote of more than two-thirds, whereby the Mayor, notwithstanding his veto, was authorized and required to subscribe $200,000, to the capital of the New Orleans Theatre Company, in shares of one hundred dollars each. To pay this subscription, the Mayor was directed to give to the directors of the Company, four hundred bonds of the Municipality for $500 each, payable thirty years after date, bearing interest at the rate of six per cent per annum, payable semi-annually, it being well understood, that the Municipality was to have the right of property in the sum subscribed, and all the benefits made by the Company annually, from the time the subscription books were opened. The Orleans Theatre Company had been incorporated by the legislature in the month of March, 1836, and the object of the Council in making this subscription, is stated to have been to aid in the construction of a large theatre in the Municipality, which would contribute to its wealth and embellishment, and afford a place of relaxation and amusement, that would tend to correct the morals and enlighten the minds of the citizens. In the month of March, 1837, the legislature passed an act, whereby the First Municipality was recognized as stockholders in the

Company, and were authorized to appoint three directors annually, to have all the power and authority of other directors of the Company, and said Company were authorized to take marine and fire risks in the same manner as the Merchant's Insurance Company. Acts 1837, p. 82, secs. 1, 2, 3. Two hundred and fifty thousand dollars of the capital of the Company, were, by this act, set apart to guaranty marine and fire risks, to make up which the bonds of the Municipality were specially set apart by the directors, and one-half of them have been pledged to Lizardi & Co. to secure the payment of a large debt owing to them. The affairs of the Company have, ever since the last act of the legislature, been managed by a board of nine directors, of whom three were appointed by the Council of the First Municipality. In 1838 a dividend was made, and the sum of $6000 was paid into the treasury of the Municipality, as its portion of the profits. Before the Municipality subscribed the $200,000, the Orleans Theatre Company had purchased the present Orleans Theatre, and had commenced insurance operations, which last were subsequently authorized by the legislature as before stated.

This suit is now brought to annul the subscription made in obedience to the resolution of the Council in 1836, to recover back the bonds issued in conformity thereto, and the sum of $16,500 paid as interest on them, on the grounds that the Council in 1836 had no right or authority to pass the resolution directing the subscription to the stock, that the power delegated to the said assembly was transcended and violated, whereby the act or resolution had become void and of no binding force. It is further alleged, that the resolution is of no effect, as the Company have abandoned the intention of erecting a new theatre, and have purchased the old one, which has been repaired at a heavy expense. The defendants aver that the resolution of the Council authorizing the subscription of $200,000 is legal and binding; that the bonds have been appropriated in the manner authorized by law, and are vested in the corporation of which the plaintiffs are members ; that contracts with third persons have been based on the faith of them ; that the intention of building a new theatre is not abandoned, but is and has been delayed by the institution of this suit, which has much injured the Company in its credit and resources and occas-

ioned them much damage ; and, further, that the plaintiffs have not in any way called on them to build the same, although represented in the board of directors. It is, therefore, prayed that there be a judgment in favor of the defendants ; that the injunction restraining the sale of the bonds be dissolved, with $40,000 damages for the injury caused by it and the other proceedings in this suit.

The Municipality, No. 1, is a civil corporation, substituted by law for the persons who reside within its limits, for purposes of temporal police, and represents the interests, rights and privileges of the people as a single whole. It follows, therefore, that this corporation can possess an estate, have a common treasury, is capable of receiving legacies and donations ; that it can make valid contracts, obligate others, and obligate itself towards others ; exercise the rights which belong to the citizens as an aggregate ; manage their own affairs, appear in courts of justice, and make such laws and regulations for their government as may seem proper, provided no law of the state or of the United States be violated. Civ. Code, arts. 422, 424. As it is an intellectual being, it cannot transact what it is authorized to do, except by some of its members, chosen by the others, who are intrusted with the direction and care of their affairs, according to the statutes and qualities of such corporation ; and the acts of such officers or agents bind the corporation in all such things as do not exceed the limits of the administration which is intrusted to them. Civ. Code, arts. 429, 430.

The Municipality, No. 1, was created by an act of the legislature, approved March 8th, 1836. It is to be governed and its affairs administered by a Recorder, and Common Council elected by the qualified voters. As a corporation it is capable of suing and being sued, of acquiring by onerous or gratuitous title all kinds of property real, personal, or mixed ; it can alienate, mortgage, enjoy, or otherwise dispose of the same, and can generally exercise, within its limits, all the powers, rights and privileges which were possessed by the former corporation of New Orleans. B. & C. Dig. 123, secs. 4, 5. In relation to the acquisition and disposition of property, this law confers powers as plenary, or nearly so, as are possessed by an individual.

We shall now briefly examine the powers conferred upon and exercised by the former corporation of New Orleans. By the 1st

and 6th sections of the act of 1805, B. and C. Digest, p. 92, 93, that corporation had the power of holding and conveying any estate, real or personal, for the use of the same, and had "power to make and pass all by-laws and ordinances for the better government of the affairs of the corporation." By the act of March, 14th, 1816, B. and C. Digest, p. 101, sec. 1, a variety of special purposes were mentioned, in relation to which the council had full power and authority to make and pass laws and ordinances ; and one power was, " to permit or to forbid theatres, balls, or other public amusements." Various other powers were conferred by other acts of the legislature, in relation to the acquisition and disposition of property, real and personal, which it is not necessary now particularly to notice, nor is it very material now to comment on the powers granted, as it appears clear to us, that if the legislature did not authorize the Municipality in the first instance to subscribe for stock in the Theatre Company, it sanctioned the act afterwards, and has thereby made the subscription obligatory, and the discharge of the bonds a contract not to be violated.

After the Theatre Company was incorporated, the authorized agents of the Municipality directed a subscription for stock to the amount stated. It is admitted that it was known before this subscription was made, that the Theatre Company had purchased the Orleans Theatre, and were engaged in taking fire and marine risks as an insurance company. On the 11th of March, 1837, not four months after the subscription now complained of, the legislature, with the full knowledge of the members representing the Municipality, in our opinion ratified the act of the Council in ordering the subscription, by conferring additional powers upon the Company, and securing to the Municipality a representation of three directors in the board, independent of all control on the part of the other stockholders. Acts 1837, p. 82 ; secs. 1, 2, 3. We cannot doubt but that at the time this law was passed, it was well known that the Municipality No. One was a stockholder for $200,000, and that the legislature intended to confirm the subscription if there was any doubt previously as to its legality, and that, by authorizing the Council to appoint three directors, it was intended to secure their interests, or afford them a chance of protection, independent of the influence that might be exercised by directors chosen by other stockholders.

First Municipality of New Orleans v The Orleans Theatre Company.

The counsel for the Municipality has insisted that the act of the legislature is retrospective in its operation, and is not binding on the present Council, nor on that which commenced this suit. Whether there was any change in the members of the Council that authorized the subscription of the $200,000, and accepted the provisions of the act of the legislature referred to, does not appear, nor is it material to inquire. The Municipality exists at all times in contemplation of law, and among its most important qualities are its immortality and individuality, properties by which a perpetual succession of many persons are considered the same persons, and may act as a single individual. These qualities enable a corporation to manage its affairs, and hold its property, without the intricacies, hazards, and perplexities incident to conveyances from one to another. The subsequent members of the Council are to be considered as knowing all the circumstances known to their predecessors in relation to this transaction, and, having accepted the act of the legislature, we hold it as binding as though the subscription had succeeded the act of March 11th, 1837.

The counsel for the plaintiffs insists that the Municipality ought to be discharged from its contract, as the Theatre Company has not applied its capital to the purposes contemplated when the subscription was made, to wit, to the building of a theatre. To this the defendants reply that they are prevented from so applying the funds of the Company, by the action of the Municipality; but a more conclusive answer is, that a stockholder in a company cannot avail himself of the misbehavior of the corporation, in not investing the capital stock according to the charter, to avoid his own contract. Whether for such conduct of the corporation, the State might not deprive it of its franchises upon due process, or a stockholder proceed for a specific performance in a legal manner, we will not now determine.

Upon a full consideration of the case, we cannot concur with the judge of the District Court in annulling this contract, and ordering the bonds issued by the Municipality to be restored and cancelled. Whatever may be our opinion as to the policy that dictated this measure, we are constrained to say it is sanctioned by law, and cannot be now repudiated.

The defendants pray for a dissolution of the injunction with

20 per cent damages, and forty thousand dollars damages by way of reconvention. We. have repeatedly held that the act of 1831 in relation to interest and damages, does not apply to a case like the present ; and we have also decided, on several occasions, that a demand in reconvention for damages caused by the institution of a suit, cannot be maintained at the same time with the suit. If the party has suffered any injury, the remedy is on the injunction bond.

The judgment of the District Court is reversed, and we order and decree that there be a judgment in favor of the defendants, that the injunction issued herein be dissolved, and the plea in re-convention dismissed, without prejudice to the claim for damages ; the plaintiff paying costs in both courts.

*Roselius* and *Preston*, for the plaintiffs.

*Eustis* and *Grymes*, for the appellants.